**WO** SC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Juan Manuel Gutierrez-Pineda, | ) | No. CV 11-0490-PHX-JAT (LOA) |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| U.S. Marshal's Service, et al., | ) | |
| Defendants. | ) | |

Plaintiff Juan Manuel Gutierrez-Pineda, who is now confined in the California City Correctional Center in California City, California, filed a *pro se* civil rights Complaint pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), and an Application to Proceed *In Forma Pauperis*.[1] (Doc. 1, 3.)[2] Plaintiff also filed motions for injunctive relief, for appointment of counsel, and assistance with service. (Doc. 5-7.) The Court will dismiss Counts I, III, the alleged violation of Plaintiff's right to petition for redress of grievances, and the USMS and grant Plaintiff 60 days from the filing date of this Order in which to file a notice of substitution for Defendant John Doe. The Court will deny Plaintiff's motions.

---

[1] Plaintiff commenced this action on March 14, 2011, while he was held at the Central Arizona Detention Center (CACD), a Corrections Corporation of America (CCA) facility.

[2] "Doc." refers to the docket number of filings in this case. "Crim. Doc." refers to the docket number of filings in Plaintiff's criminal cases.

**TERMPSREF**

## I.     Application to Proceed *In Forma Pauperis* and Filing Fee

Plaintiff's Application to Proceed *In Forma Pauperis* will be granted. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will not assess an initial partial filing fee. 28 U.S.C. § 1915(b)(1). The statutory fee will be collected monthly in payments of 20% of the previous month's income each time the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2). The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

## II.    Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual

1 allegations may be consistent with a constitutional claim, a court must assess whether there
2 are other "more likely explanations" for a defendant's conduct. Id. at 1951.

3 But as the United States Court of Appeals for the Ninth Circuit has instructed, courts
4 must "continue to construe *pro se* filings liberally." Hebbe v. Pliler, 627 F.3d 338, 342 (9th
5 Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards
6 than formal pleadings drafted by lawyers.'" Id. (quoting Erickson v. Pardus, 551 U.S. 89,
7 94 (2007) (*per curiam*)).

## III.   Complaint

Plaintiff alleges four counts for denial of constitutionally adequate medical care and a claim for violation of the right to petition for redress of grievances. Plaintiff sues the U.S. Marshal's Service (USMS) and John Doe, the USMS employee responsible for authorizing medical treatment. Plaintiff seeks declaratory, injunctive, and compensatory relief.

Except as otherwise indicated, Plaintiff alleges the following facts: On August 30, 2007, Plaintiff was arrested for illegal re-entry into the United States. See United States v. Gutierrez-Pineda, No. CR07-1691-TUC-DCB (HCE), Crim. Doc. 1.[3] In September 2007, CADC medical staff drew blood from Plaintiff for testing. (Doc. 1, Ex. 1 at 1.) Further, at his initial medical screening, Plaintiff informed medical staff that he was losing hearing in his left ear and suffering severe pain and told them that pus was draining from the ear. (Doc. 1, Ex. 2 at 1.) Plaintiff was informed that his ear problems were the result of excessive wax and he was provided ear drops. (Doc. 1, Ex. 2 at 1.) Plaintiff disagreed and told medical officials that he was suffering inner ear pain and that pus from the ear emitted a foul odor. (Id. at 2.) Plaintiff began submitting Sick Call Requests (SCRs) regarding his ear. (Id.) In November, 2007, medical staff informed Plaintiff that he was being scheduled to be examined by an outside ear doctor. (Id.) In December 2007, an outside ear doctor informed Plaintiff that he had a hole in his left eardrum and recommended an MRI. (Id.) In February 2008, an MRI of Plaintiff's ear was performed. (Id.) In April 2008, Plaintiff was taken to

---

[3] Plaintiff had previously been removed from the United States on April 21, 2006. Id.

1  the outside ear doctor, who informed Plaintiff of the MRI results, which confirmed there was
2  a hole in Plaintiff's left eardrum and that Plaintiff had a "permanent ear infection and bones
3  out of place in [the] ear." (Id.) The physician recommended surgery to drain the infection
4  and to reconstruct the bones in his ear. (Id.)

5  Meanwhile, after the initial blood test, Plaintiff's blood was tested approximately
6  every two weeks until December 2007. (Doc. 1, Ex. 1 at 1.) In December 2007, Plaintiff
7  was informed that his blood was being tested because medical staff believed that there was
8  a problem with his kidneys and that he was being scheduled for an ultrasound by an outside
9  doctor. (Id.) The ultrasound was performed later that month and the performing doctor told
10 Plaintiff there was a problem with one kidney. (Id. at 2.) In January 2008, Plaintiff was
11 examined by another outside physician, who recommended an MRI. (Id.) In February 2008,
12 an MRI was performed, which revealed possible cancer in one kidney. (Id.) Medical staff
13 recommended that Plaintiff receive an advanced MRI to confirm whether he had cancer.
14 (Id.) In April 2008, Plaintiff received an advanced MRI of his kidneys. (Id.) In June 2008,
15 Plaintiff was informed of the results by an outside doctor, who told Plaintiff that he did not
16 have cancer but that one kidney was only working at 60%. (Id. at 3.) That doctor
17 recommended surgery; Plaintiff does not allege the nature or purpose of the recommended
18 surgery.

19 On August 12, 2008, after pleading guilty pursuant to a plea agreement, Plaintiff was
20 sentenced to 27 months in prison followed by 36 months on supervised release. CR07-1691,
21 Crim. Doc. 14, 38. That month, Plaintiff began making verbal and written requests for the
22 recommended ear and kidney surgeries, neither of which had been performed. (Doc. 1, Ex.
23 1 at 3, Ex. 2 at 3.) He also began asking, verbally and in writing, to file a grievance. (Id.)
24 Plaintiff was not permitted to submit a grievance and contends that he was denied access to
25 the grievance process. (Doc. 1, Ex. 1 at 3, Ex. 2 at 3.)

26 In October 2008, Plaintiff was transferred to a Federal Bureau of Prisons (BOP)
27 facility. (Id.) Plaintiff's medical records from CACD were not immediately forwarded to
28 BOP and by the time they were, Plaintiff was informed that his release date was too near for

**TERMPSREF**                                         - 4 -

1  him to receive surgery for his ear or kidney. (Id.) Plaintiff was discharged from
2  imprisonment on August 15, 2009 and, on October 23, 2009, he was removed from the
3  United States to El Salvador. See United States v. Gutierrez-Pineda, No. CR10-0879-TUC-
4  DCB, Crim. Doc. 1, 5; Doc. 1, Ex. 3 at 1.

5  On April 1, 2010, Plaintiff was again arrested by federal authorities, this time for
6  attempted illegal re-entry after deportation. See United States v. Gutierrez-Pineda, No.
7  CR10-0879-TUC-DCB, Crim. Doc. 1.[4] Upon his arrival at CADC on April 6, Plaintiff
8  informed medical staff that he suffered from kidney failure and an ear infection and that
9  surgery had been recommended for both conditions in June 2008 when he was previously
10 incarcerated at CADC. (Doc. 1, Ex. 1 at 3, Ex. 2 at 3.)

11 In May 2010, Plaintiff was informed that he would be seen by outside doctors
12 regarding his kidney failure and ear infection. (Doc. 1, Ex. 1 at 4, Ex. 2 at 3.) On June 21,
13 2010, Plaintiff was seen by an outside physician concerning his kidney; that physician
14 recommended another MRI of his kidney and that surgery be performed in light of his
15 medical history. (Id.) Again, Plaintiff does not allege the type of surgery or purpose of the
16 surgery. On June 28, 2010, Plaintiff's ear was examined by an outside physician, who told
17 Plaintiff that he had a hole in his eardrum, and who recommended that an MRI be obtained
18 and surgery performed to drain the ear and reconstruct the bones. (Doc. 1, Ex. 2 at 3.)

19 In late July, Plaintiff submitted an SCR to CACD Health Services Administrator
20 Campanea requesting an MRI of his kidney. (Doc. 1, Ex. 1 at 4.) On September 17, 2010,
21 Plaintiff submitted an SCR concerning continued problems with his ear and requested
22 immediate surgery. (Doc. 1, Ex. 2 at 4.) Two days later, Plaintiff received a response stating
23 that a "CT scan" was pending. (Id., attach. A.)

---

[4] Plaintiff was ordered detained and was subsequently indicted. Id., Crim. Doc. 4, 5. On May 27, 2010, Plaintiff entered a guilty plea to the indictment. Id., Crim. Doc. 10, 11. On June 23, 2010, the District Court adopted the Magistrate Court's findings and recommendations that Plaintiff's guilty plea was voluntary. Id., Crim. Doc. 13. Plaintiff was granted several continuances of sentencing, until he was sentenced on March 20, 2011 to 51 months in prison followed by supervised release for 24 months. Id., Crim. Doc. 23.

1  On September 27, 2010, Plaintiff asked his case manager, Peter Gammill, to provide him with a grievance form to grieve CADC medical staff's failure to provide him surgeries for his kidney and ear. (Doc. 1, Ex. 1 at 4, Ex. 2 at 4.) Gammill refused to provide Plaintiff with the forms and said that he could not help Plaintiff because he was not a doctor. (Id.) Gammill instructed Plaintiff to submit a "Prisoner Information Request" (PIR). (Id.) On September 28, 2010, Plaintiff submitted a PIR to Gammill regarding not being provided ear surgery. (Doc. 1, Ex. 2 at 4, Attach. B.) On October 5, 2010, Plaintiff submitted a PIR to Gammill asking to file a grievance about the failure to receive surgery for his kidney. (Doc. 1, Ex. 1, Attach. A.) Plaintiff twice asked Gammill to respond to his PIR, but Gammill told him he would respond later. (Doc. 1, Ex. 1 at 5.) Plaintiff never received a response or grievance forms and claims that he was denied access to the grievance process by Gammill. (Id.)

Between April and December 2010, Plaintiff was informed on numerous occasions by CADC medical staff that outside medical appointments had to be pre-approved by the USMS. (Doc. 1, Ex. 3 at 1.) Plaintiff was also informed that the USMS had to pre-approve payment for surgeries. (Id.) Plaintiff was informed that CADC was neither required nor willing to pay for the surgeries. (Id.) Since April 6, 2010, Plaintiff has suffered from persistent pain in his ear and his hearing continues to deteriorate. (Id.) Since October 2010, Plaintiff has suffered from a persistent sharp pain in his kidney. (Id.)

On March 30, 2011, Plaintiff filed a notice of change of address reflecting that he was transferred to the California City Correctional Center (CCCC) on March 18, 2011. (Doc. 8.) CCCC is a CCA facility and, according to its website, the USMS is its "customer base."[5]

### IV.  Failure to State a Claim

To state a Bivens claim, a plaintiff must allege that persons acting under color of federal law violated a federal constitutional right. Martin v. Sias, 88 F.3d 774, 775 (9th Cir. 1996) (citing Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991). Thus, an action under

---

[5] See http://www.cca.com/facility/california-city-correctional-center/ (viewed March 31, 2011).

1   Bivens is identical to one brought pursuant to 42 U.S.C. § 1983, except for the replacement
2   of a state actor under § 1983 by a federal actor under Bivens. Id. To state a valid
3   constitutional claim, a plaintiff must allege that she suffered a specific injury as a result of
4   the conduct of a particular defendant, and she must allege an affirmative link between the
5   injury and the conduct of that defendant. Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

### A.     USMS

7   Plaintiff sues the USMS, a federal agency. A Bivens claim may only be maintained
8   against officials acting under color of federal law in their individual capacities and not
9   against a federal agency, such as the USMS. See FDIC v. Meyer, 510 U.S. 471, 486 (1994)
10  (federal agencies are not proper defendants in a Bivens action); Myers v. U.S. Marshals
11  Serv., No. CV10-2662, 2011 WL 671998, at *2 (S.D. Cal. Feb. 15, 2011); see also
12  Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 71-72 (2001) (liability under Bivens does
13  not extend to a private corporation that employed individuals who violated a plaintiff's
14  constitutional rights); Pollard v. Geo Group, Inc., 629 F.3d 843, 854 (9th Cir. 2010) (federal
15  prisoner may sue employees of private prison operated pursuant to contract with federal
16  government under Bivens); Agyeman v. Corrections Corp. of America, 390 F.3d 1101, 1103-
17  104 (9th Cir. 2004) (same). Because Bivens claims are directed at conduct of individuals,
18  the USMS is not a proper Defendant as to Plaintiff's Bivens' claims. See Meyer, 510 U.S.
19  at 486; see also Malesko, 534 U.S. at 71-72; Vaccaro v. Dobre, 81 F.3d 854, (9th Cir. 1996).
20  Plaintiff also states that he brings this action under the Administrative Procedures Act
21  (APA) and that the sovereign immunity of the United States is waived as to such claims.
22  Even assuming Plaintiff is correct, such claim is subject to dismissal because Plaintiff fails
23  to allege facts to support that specific USMS action failed to comply with applicable
24  standards under the APA. Accordingly, the USMS will be dismissed as a Defendant.

### B.     Fifth Amendment Violations

26  In Counts I and III, Plaintiff alleges violation of his Fifth Amendment right to due
27  process based upon the alleged deliberate indifference to his serious medical needs. "[I]f a
28  constitutional claim is covered by a specific constitutional provision, such as the Fourth or

1 Eighth Amendment, the claim must be analyzed under the standard appropriate to that
2 specific provision, not under the rubric of substantive due process." Crown Point Dev., Inc.
3 v. City of Sun Valley, 506 F.3d 851, 853 (9th Cir. 2007) (citing Graham v. Connor, 490 U.S.
4 386, 388 (1989)); see Albright v. Oliver, 510 U.S. 266, 273 (1994). In this case, Plaintiff
5 alleges claims for denial of constitutionally adequate medical care. Such claims are covered
6 by the Eighth Amendment and must be analyzed under the Eighth Amendment.
7 Accordingly, Plaintiff's claims for violation of his Fifth Amendment rights will be dismissed.

        **C.**     **Petition for Redress of Grievances**

9 Although not separately denominated, Plaintiff in part appears to allege that Peter
10 Gammill violated his right to petition for redress of grievances, but Plaintiff has not named
11 Gammill as a Defendant. While "[t]here is no legitimate claim of entitlement to a [prison]
12 grievance procedure," Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), the right of
13 meaningful access to the courts extends to established prison grievance procedures. Hall, 64
14 F.3d at 1279; Valandingham, 866 F.2d at 1138. The "government" to which the First
15 Amendment guarantees a right to petition for redress of grievances includes prison
16 authorities. Hall, 64 F.3d at 1279 (citing Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310,
17 1314 (9th Cir.1989)). Although Plaintiff may bring such claim, Plaintiff failed to name as
18 a Defendant the only person identified as having violated that right, i.e., Gammill. For that
19 reason, Plaintiff fails to state a claim for violation of the right in his Complaint.

20 **IV.**    **Claims for Which an Answer Will be Required**

21 Plaintiff sufficiently states a claim for deliberate indifference to his serious medical
22 needs against the USMS employee who failed or refused to authorize recommended surgery.
23 As discussed below, Plaintiff will be granted 60 days in which to file a notice of substitution
24 as to the Doe Defendant.

25 **V.**    **Service on the Doe Defendant Cannot Be Effected at this Time**

26 Plaintiff sues a fictitiously-named Defendant, John Doe, the USMS employee who has
27 failed or refused to approve payment for recommended surgeries on Plaintiff's ear and
28 kidney. The use of anonymous type appellations to identify defendants is generally

disfavored. Rule 10(a) of the Federal Rules of Civil Procedure requires the plaintiff to include the names of the parties in the action. As a practical matter, it is impossible in most instances for the United States Marshal or his designee to serve a summons and complaint upon an anonymous defendant. Thus, although Plaintiff has alleged claims with enough specificity to require an answer, the Court cannot direct that service be made on the Doe Defendant at this time.

The Ninth Circuit has held that where identity is unknown prior to the filing of a complaint, the plaintiff should be given an opportunity through discovery to identify the unknown defendant, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds. Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)). The Court will allow Plaintiff 60 days in which to discover the actual names of the Doe Defendant, through *subpoena* or otherwise, and to substitute his or her actual name by filing a "notice of substitution." See Wakefield, 177 F.3d at 1163. Failure to timely file a notice of substitution will result in the dismissal of the Doe Defendant without prejudice.

**VI.  Motion for a Injunctive Relief**

As noted above, Plaintiff has filed a motion for injunctive relief. Plaintiff seeks injunctive relief to require the USMS to authorize the recommended surgeries prior to his transfer from its custody to the BOP following sentencing. Plaintiff believes that his transfer to BOP custody will result in the BOP declining the recommended surgery because of the proximity of his release. Plaintiff's concerns are speculative. First, two days after he filed the Complaint, Plaintiff was sentenced to 51 months in prison. It is unlikely that the BOP would decline surgery based on the proximity of Plaintiff's release in light of his prison term, although it may refuse to authorize surgery for other reasons. Second, as discussed above, the USMS is being dismissed and the Doe Defendant has not yet been served with the motion or the Complaint. "No preliminary injunction shall be issued without notice to the adverse party." Fed.R.Civ. P. 65(a)(1). Further, a temporary restraining order without notice may be granted *only* if the applicant certifies to the court in writing the efforts, if any, that he

1 made to give notice and the reasons that notice should not be required. Fed.R.Civ.P. 65(b).

2 Under these circumstances, the Court will deny Plaintiff's motion without prejudice.

3 **VII.   Motions for Appointment of Counsel and Assistance with Copies and Service**

4 Plaintiff has also filed a motion for appointment of counsel and for court assistance

5 with copies and service. (Doc. 6, 7.) Both motions will be denied.

6 Plaintiff seeks the appointment of counsel. Counsel is only appointed in a civil rights

7 action in "exceptional circumstances." Agyeman, 390 F.3d at 1103; Wilborn v. Escalderon,

8 789 F.2d 1328, 1331 (9th Cir. 1986); Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991).

9 "A finding of exceptional circumstances requires an evaluation of both 'the likelihood of

10 success on the merits [and] the ability of the [plaintiff] to articulate his claims *pro se* in light

11 of the complexity of the legal issues involved.'" Wilborn, 789 F.2d at 1331; see Agyeman,

12 390 F.3d at 1103; Terrell, 935 F.2d at 1017. The legal issues involved in this case do not

13 present exceptional circumstances and Plaintiff appears able to articulate his claims.

14 Accordingly, Plaintiff's motion for appointment of counsel will be denied.

15 Plaintiff's motion for assistance with copies and service will also be denied. As

16 discussed herein, Plaintiff will be afforded an opportunity to discover the name of the Doe

17 Defendant. If and when Plaintiff discovers Doe's actual name and substitutes that person as

18 a Defendant, the Court will order service of the Complaint upon that Defendant by the U.S.

19 Marshal's Service.

20 **VIII.  Warnings**

21 **A.   Release**

22 Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release.

23 Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay

24 the balance or (2) show good cause, in writing, why he cannot. Failure to comply may result

25 in dismissal of this action.

26 **B.   Address Changes**

27 Plaintiff must file and serve a notice of a change of address in accordance with Rule

28 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other

1  relief with a notice of change of address. Failure to comply may result in dismissal of this
2  action.

### C. Copies

4  Plaintiff must submit an additional copy of every filing for use by the Court. See
5  LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice
6  to Plaintiff.

### D. Possible Dismissal

8  If Plaintiff fails to timely comply with every provision of this Order, including these
9  warnings, the Court may dismiss this action without further notice. See Ferdik, 963 F.2d at
10 1260-61 (a court may dismiss an action for failure to comply with any order of the Court).

11 **IT IS ORDERED:**

12  (1) Plaintiff's Application to Proceed *In Forma Pauperis* is **granted**. (Doc. 3.)

13  (2) As required by the accompanying Order to the appropriate government agency,
14 Plaintiff must pay the $350.00 filing fee and is not assessed an initial partial filing fee.

15  (3) Plaintiff's motions are **denied**. (Doc. 5-7.)

16  (4) Counts I and III, as well as the alleged violations of the right to petition for
17 redress of grievances, and Defendant U.S. Marshal's Service are **dismissed** without
18 prejudice.

19  (5) Plaintiff is granted **60 days** from the filing date of this Order in which to
20 discover by subpoena or otherwise the identity of Defendant John Doe and to file a "notice
21 of substitution" providing the Defendant's name in place of John Doe.

22  (6) The Clerk of Court must issue a subpoena in blank and send it to Plaintiff.

23  (7) The Clerk of Court must enter a judgment of dismissal for failure to prosecute
24 without prejudice and without further notice to Plaintiff, if Plaintiff fails to file a "notice of
25 substitution" of parties within 60 days from the filing date of this Order.

26 #
27 #
28 #

TERMPSREF

(8)   This matter is referred to Magistrate Judge Lawrence O. Anderson pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

DATED this 31st day of March, 2011.

James A. Teilborg
United States District Judge

(8)   This matter is referred to Magistrate Judge Lawrence O. Anderson pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

DATED this 31st day of March, 2011.

James A. Teilborg
United States District Judge